# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| ANXO CEREIJO ROIBAS, as assignee of Melissa True, and MELISSA TRUE,<br><br>Plaintiffs,<br><br>v.<br><br>EBPA, LLC, d/b/a/ Employee Benefit Plan Administration, and MAINEGENERAL HEALTH,<br><br>Defendants. | Docket No. 1:17-cv-020-NT |

## ORDER ON CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

The parties to this action dispute the terms of the MaineGeneral Health Employee Health Plan (the "**Plan**"), of which Plaintiff Melissa True is a beneficiary. The Plan is governed by the Employee Retirement Income Security Act ("**ERISA**"). This matter comes before me on cross-motions for judgment on the administrative record filed by the Plaintiffs (ECF No. 50) and by Defendant MaineGeneral Health ("**MaineGeneral**" or the "**administrator**") (ECF No. 48). For the reasons set out below, I **DENY** the Plaintiffs' motion and I **GRANT** MaineGeneral's motion.

## THE PARTIES

Plaintiff True is an employee of MaineGeneral and a beneficiary of the Plan. Plaintiff Roibas is an assignee of True's rights to reimbursement of medical expenses for services covered by the Plan. AR 327, 339.[1] Defendant MaineGeneral is the Plan

---

[1] All citations to the Administrative Record (ECF Nos. 21 and 44) are listed as AR.

administrator, responsible for selecting the terms of the Plan and interpreting them. AR 93. Defendant EBPA is the third party administrator of the Plan and conducts the administrative, "ministerial," operations, such as processing claims. *See* AR 93, 102.[2]

## FACTUAL BACKGROUND

In August of 2014, Melissa True entered into a "Gestational Carrier Agreement" (the "**Agreement**") with intended parents Anxo Cereijo Roibas and Szczepan Wojciech (the "**Intended Parents**"). AR 329. The Agreement provided that True would "carry and deliver the child(ren) of the Intended Parents . . . through medical procedures using assisted reproductive technology." AR 329-30. True was to be compensated for serving as a gestational carrier. AR 341-42. The Intended Parents also committed to "pay all medical expenses which are reasonably and directly related to the pregnancy and birth *which are not covered by* [*True's*] *health insurance*." AR 339 (emphasis added). True agreed to submit claims for all pregnancy-related medical expenses to her health insurer and to assist the Intended Parents in seeking to have the expenses covered, including through "all available administrative and legal remedies" if the insurer denied the claims. AR 331-32.

In a section titled, "Medical Covered Expenses," the Plan lists,

[c]harges for maternity care including prenatal, delivery, and postpartum care as well as charges arising from complications that may occur during maternity and delivery. Comprehensive lactation support

---

[2]  EBPA does not have the discretion to interpret the Plan or its terms. AR 102.

and counseling, by a trained provider during pregnancy and/or in the postpartum period are payable at 100% at the applicable benefit level.

AR 027. The next section of the Plan is titled, "General Medical Exclusions and Limitations," and lists, "[e]xpenses for surrogacy." AR 032.

True became pregnant and gave birth, in accordance with the Agreement. Medical expenses from the pregnancy and delivery were submitted to EBPA. AR 110-84; 299. EBPA initially approved, and paid for, some expenses related to True's pregnancy. *See* AR 110-21, 127-29, 134-36, 146-52, 299. Upon review of True's claims and medical records, a utilization review nurse employed by EBPA identified that True was a surrogate mother and that, accordingly, her claims should be denied because they were not covered by the Plan. AR 299.

## PROCEDURAL BACKGROUND

True appealed the denial of her claims in a letter to EBPA dated January 20, 2016. She stated that the "main[]" basis of her appeal was that she "was informed there would not be any issues related to claims for prenatal care" during a call to EBPA in January 2015, in which she inquired "to determine if EBPA had maternity coverage for surrogacy related pregnancies." AR 301. True claimed in the letter that she was informed on that call that "there was no exclusion, [and] that pregnancy was a covered diagnosis." AR 301. After communicating with MaineGeneral, EBPA denied True's appeal, claiming that it had no record of the phone call that she referenced. AR 302. EBPA further informed her that "[v]erification can only be documented in your file when you had actual medical coverage" and that "a verification of benefits is not a guarantee of coverage." AR 302.

True, with the assistance of counsel, filed a second administrative appeal in April of 2016, arguing that "[t]he Plan does not distinguish between pregnancies based upon why the woman became pregnant." AR 304. True also argued that she served as a gestational carrier, rather than a surrogate, that "[t]he Plan does not state that expenses for a 'gestational carrier' are excluded," and that any ambiguity in the Plan should be construed in favor of coverage. AR 305. EBPA denied this appeal in a letter dated May 4, 2016. AR 318-19. The basis for the denial was that "True's denied claims fall under the surrogacy exclusion as outlined in the [Plan]," and that, to the extent that True was a gestational carrier and not a surrogate, the Plan excludes "[e]xpenses for any service, procedure or supply not listed as a covered service in the [P]lan." AR 318.

Roibas filed a Complaint in this court on January 19, 2017. Roibas claimed standing to challenge the administrator's denial of claims as True's assignee. Compl. (ECF No. 1). True was added as a plaintiff to the action on August 3, 2017. Second Am. Compl. (ECF No. 35). The Plaintiffs and MaineGeneral then filed the instant motions for judgment on the record.[3]

---

[3] Defendant EBPA filed an "opposition to the Plaintiffs' motion for judgment on the record for [the] limited purpose" of "impress[ing] upon [the Court] the fundamental point that EBPA does not belong here." EBPA Opp'n 1 (ECF No. 52). EBPA sought to be removed "from this case because the statute compels that result." EBPA Opp'n 1. EBPA further explained that MaineGeneral was the Plan administrator with the discretionary authority to interpret the Plan. EBPA Opp'n 4-7. EBPA finally "adopt[ed] the factual recitation and legal arguments" of MaineGeneral's motion for judgment on the record. Accordingly, I treat EBPA as having moved for judgment.

## LEGAL STANDARD

"By cross-moving for judgment based on the administrative record filed in this case, the parties empower the court to adjudicate this case based on that record, resolving any factual as well as legal disputes." *Ellis v. Unum Life Ins. Co. of Am.*, No. 2:13-CV-00080-JAW, 2014 WL 235212, at *2 (D. Me. Jan. 22, 2014) (citing *Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 31 (1st Cir. 2000)).

The parties have stipulated that the applicable standard of review for MaineGeneral's decision to deny True's benefit claims is whether that decision was "arbitrary, capricious, or an abuse of discretion . . . as established by the Plan and *Firestone Tire and Rubber Co. v. Bruch*, [489 U.S. 101 (1989)] and its progeny."[4] Consent Mot. to Am. Scheduling Order ¶ 5 (ECF No. 42).[5] The First Circuit has noted that in this context, "the arbitrary and capricious standard is functionally equivalent to the abuse of discretion standard." *Dutkewych v. Standard Ins. Co.*, 781 F.3d 623, 633 n.6 (1st Cir. 2015). Under that standard, I "need not decide the 'best reading' of the Plan." *O'Shea through O'Shea v. UPS Ret. Plan*, 837 F.3d 67, 73 (1st Cir. 2016). Instead, I must evaluate whether the administrator's decision "is reasonable and supported by substantial evidence on the record as a whole." *Doe v. Standard Ins. Co.*, 852 F.3d 118, 123 (1st Cir. 2017). I may not disturb the administrator's

---

[4] *Firestone Tire & Rubber Co. v. Bruch* held "that a denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. 101, 115 (1989).

[5] Magistrate Judge Rich granted the parties' motion to amend the scheduling order, which included the above-referenced stipulation, on November 6, 2017. (ECF No. 43.)

reasonable interpretation even if I would have come to a different conclusion or if the Plaintiffs have offered a competing reasonable interpretation. *See Stamp v. Metro. Life Ins. Co.*, 531 F.3d 84, 94 (1st Cir. 2008); *see also Ho-Rath v. Tufts Associated Health Maint. Org., Inc.*, No. CA 12-546 S, 2013 WL 5924428, at *2 (D.R.I. Oct. 31, 2013); *Massey v. Stanley-Bostitch, Inc.*, 255 F. Supp. 2d 7, 11 (D.R.I. 2003).[6]

## DISCUSSION

The parties have presented three issues for my consideration: First, whether Plaintiff Roibas has standing to challenge the administrator's interpretation; second, whether MaineGeneral's decision to deny True's claims on the grounds that her pregnancy expenses were "expenses for surrogacy" was arbitrary and capricious; and third, whether the Plaintiffs or the Defendants are entitled to attorneys' fees on this motion. Because I ultimately conclude that the Defendants prevail on the merits, and because Defendants do not contend that Plaintiff True lacks standing, I proceed directly to the merits.[7]

---

[6] Where, as here, the Plan administrator is also responsible for paying benefits under the Plan, the administrator faces a conflict of interest that I must take into account when determining whether the administrator abused its discretion. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008).

[7] The Defendants argue that Plaintiff Roibas lacks standing because he is neither a participant in nor beneficiary of the Plan as required under Section 502(a) of ERISA, 29 U.S.C. § 1132(a). Def.'s Mot. 16-20. The Plaintiffs contend that the Defendants have waived the standing issue because they have raised the issue too late. While statutory standing can be waived, *Merrimon v. Unum Life Ins. Co. of America*, 758 F.3d 46, 53 n.3 (1st Cir. 2014), the Plaintiffs cite no authority for the proposition that statutory standing must be raised before a motion for judgment on the record. The Defendants raised the standing issue in their opening memorandum. The Plaintiffs had ample opportunity to respond to the challenge to Roibas' standing and their waiver argument falls flat.

The issue of whether an assignee has standing to bring an ERISA claim raises difficult questions. ERISA contemplates suits only by plan participants, beneficiaries, fiduciaries, or the Secretary. 29 U.S.C. § 1132(a). In *City of Hope National Medical Center v. Healthplus, Inc.*, the First Circuit extended these categories by relying on derivative standing and allowed a health care provider, as an assignee of a plan participant, to bring a challenge under ERISA. 156 F.3d 223, 228 (1st Cir. 1998). The Ninth Circuit has refused to extend the concept of derivative standing in ERISA cases

## I. Denial of Benefits

"Neither the Supreme Court nor [the First Circuit] has 'spoken directly to how courts should assess whether an administrator's construction of a plan term is so unreasonable as to constitute an abuse of discretion.'" *Dutkewych*, 781 F.3d at 636 n. 8 (quoting *D & H Therapy Assocs., LLC v. Boston Mut. Life Ins. Co.*, 640 F.3d 27, 36 (1st Cir. 2011)). In *D & H Therapy*, the First Circuit surveyed, without adopting, guidelines used by other Circuits. *D & H Therapy Assocs.*, 640 F.3d at 37-38. Boiled down, most of the guiding factors used in other jurisdictions involve assessing whether the administrator's construction (1) runs contrary to the plan's plain language; (2) squares with the general purpose of the plan; 3) renders the plan internally inconsistent or leaves another plan provision meaningless; and (4) has been consistently applied. *D & H Therapy Assocs.*, 640 F.3d at 38. While the First Circuit seems to prefer a case by case analysis of whether a plan administrator has abused its discretion, at least some of the factors followed in other jurisdictions have been used by the First Circuit. *See Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Assocs. Long Term Disability Plan*, 705 F.3d 58, 65 (1st Cir. 2013) ("[T]he discretion of a plan administrator is cabined by the text of the plan and

---

beyond a judicially-created exception for health care providers. *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1081 (9th Cir.), *amended*, 234 F.3d 428 (9th Cir. 2000), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007). The Third Circuit has indicated in dicta that it does not recognize assignee standing under ERISA at all. *Northeast Dep't ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147, 154 n. 6 (3d Cir. 1985).

     Whether Roibas should be allowed derivative standing is further complicated by Plaintiff True's presence in the litigation. In *City of Hope,* the First Circuit suggested that the assignee must stand in place of the assignor, not next to the assignor. *City of Hope*, 156 F.3d at 226 ("If an assignee seeking relief in court stands in the place of an assignor, there has been a substitution rather than an expansion of the parties."). Without briefing by Roibas on this point, I conclude that he has failed to establish standing, and, accordingly, I **DISMISS** him from the case.

the plain meaning of the words used."); *Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 124 (1st Cir. 2004) ("Where a plan administrator has chosen consistently to interpret plan terms in a given way, that interpretation is relevant in assessing the reasonableness of the administrator's decision.").

Where a term is ambiguous in a plan that grants the administrator the authority to construe the plan's terms, a court must defer to an administrator's reasonable interpretation of that term. *Vendura v. Boxer,* 845 F.3d 477, 482 (1st Cir. 2017); *see CNH Indus. N.V. v. Reese*, 138 S. Ct. 761, 765 (2018) (A term is ambiguous where it is "reasonably susceptible to at least two reasonable but conflicting meanings.") (quotation omitted). "When interpreting the provisions of an ERISA benefit plan," a court uses "the common-sense canons of contract interpretation." *Vendura*, 845 F.3d at 484. "The rule of *contra preferentum,* which ordinarily requires that ambiguous language in an insurance policy be construed against the interest of its author, is inapplicable in the ERISA context when [as here] the plan affords the decision-maker discretionary authority to construe plan language." *Hannington v. Sun Life and Health Ins. Co.*, No. 1:10-cv-431-GZS, 2011 WL 4913572, at *3 (D. Me. 2011), citing *D & H Therapy Assocs.*, 640 F.3d at 35.

The First Circuit has not yet "articulated precise guidelines for determining when a plan administrator's construction will be sufficiently reasonable to warrant deference even though it is only as persuasive or less persuasive than the interpretation offered by the plaintiffs." *O'Shea*, 837 F.3d at 76 n.14 (quotation marks omitted) (citing *D & H Therapy Assocs.*, 640 F.3d at 36). However, I interpret *Vendura*

as requiring deference to an administrator's determination when each party advances readings that are similarly persuasive.

### 1. Whether the Term "Expenses for Surrogacy" is Ambiguous.

Both parties contend that the Plan unambiguously supports their diametrically opposed positions. The Plaintiffs argue that "[p]regnancies, regardless of their cause or purpose, are unambiguously covered under the Plan." Pls.' Mot. 4. "The fact that certain 'surrogacy' 'expenses' are excluded does not mean that a [sic] pregnancy expenses that are merely related to a surrogacy agreement should be excluded." Pls.' Mot. 4. According to the Plaintiffs, a plan participant who retains a surrogate cannot be reimbursed for the cost of retaining a surrogate under the "expenses for surrogacy" exclusion, but the expenses of a pregnancy that results when a plan participant serves as a gestational carrier are not excluded. Pls.' Mot. 4. The Plaintiffs point out that the Plan does not make any distinctions between pregnancies based on the purpose of the pregnancy or on who the intended parents are to be. Pls.' Mot. 4. Because the Plaintiffs view the costs related to the pregnancy of a plan participant as distinct from expenses related to surrogacy, they argue that the Plan unambiguously covers True's pregnancy expenses and that the administrator's decision to deny True benefits was arbitrary and capricious.

The Defendants contend that the surrogacy exclusion unambiguously bars expenses relating to the pregnancy and childbirth of a surrogate mother. Though they concede that the term "surrogacy" is not defined in the Plan, the Defendants argue that "[t]he plain meaning of 'surrogacy,' as gleaned from common dictionary

definitions, is broad and commonly understood to encompass the entire process of carrying and delivering a child for another person." Def.'s Mot. 6 (citing Black's Law Dictionary 1674 (10th ed. 2014)). The Defendant believes that the Plaintiffs read the key provisions of the Plan in isolation, rather than reading the Plan as a whole. *See Vendura*, 845 F.3d at 484. From this perspective, the "expenses for surrogacy" exclusion can only be read to include the expenses of the surrogate mother's pregnancy and childbirth.

In *Florida Health Science Center, Inc. v. Rock*, the district court concluded that an ERISA plan with similar exclusions for surrogacy-related expenses was ambiguous. No. 8:05-cv-1601-T-EAJ, 2006 WL 3201873, at *7 (M.D. Fla. Nov. 4, 2006).[8] Like the court in Florida, I find that the surrogacy exclusion in the context of the Plan is ambiguous. Both sides' interpretations are plausible. Because I find ambiguity, I proceed to address whether the administrator's construction of the Plan is unreasonable.

### 2. Whether the Plan Administrator's Interpretation is Unreasonable.

Although the First Circuit has not settled definitively on guiding principles for when a Plan administrator's interpretation is unreasonable, the text of the Plan and the plain meaning of the Plan's terms are a logical starting point. *See Colby*, 705 F.3d at 65. Here, the Defendants' conclusion that "expenses for surrogacy" can be read to

---

[8] The Plaintiffs' reliance on *Mid-South Ins. Co. v. Doe*, which did not involve an ERISA plan, is unavailing because the holding in *Mid-South* did not turn on an interpretation of "surrogacy." 274 F. Supp. 2d 757, 764 (D.S.C. 2003).

mean *all* expenses associated with a pregnancy by means of a surrogate—from the costs of preparing a surrogacy agreement, to in vitro fertilization, to pre-natal care, to delivery, and to post-birth care for the mother and child—is grounded in the common understanding of surrogacy. *See* Black's Law Dictionary 1674 (defining "surrogacy" as "[t]he process of carrying and delivering a child for another person"). The Plaintiffs argue that True served as a gestational carrier, and not a surrogate, because a "surrogate mother provides her own egg to be fertilized, while a gestational carrier hosts the fertilized egg of another individual and carries it to term." Pls.' Mot. 8. Because "[n]owhere does the Plan reference gestational carriers or otherwise exclude a gestational carrier's pregnancy from the Plan's benefits provided relative to prenatal care," the Plaintiffs conclude that the surrogacy exclusion cannot apply. Pls.' Mot. 8. But the plain meaning of "surrogacy" encompasses carrying a child for another couple. While there may be another more narrow reading possible, the Plan Administrator's interpretation does not contravene the plain meaning of the term "surrogacy."

Some Circuits consider whether the Administrator's interpretation is in keeping with the purpose of the Plan. Here, the Administrator's construction is more closely aligned with the Plan's purpose of "provid[ing] medical benefits for all covered employees." AR 002. Read in its entirety, the Plan is consistent in its broad exclusion of artificial means of achieving a pregnancy. *See* AR 034-035 (excluding treatments and procedures related to infertility and "expenses for surrogacy"). Under the Plaintiffs' reading of the Plan a "gestational carrier" would receive benefits for

pregnancy expenses but a "surrogate mother" would not be entitled to those benefits. While it seems possible that the drafters of the Plan would carve out all carriers regardless of whether they used their own or a donor egg, it is hard to believe that they would have intended to cover the pregnancy expenses of a Plan participant who served as a gestational carrier but deny pregnancy benefits to a Plan participant who was a biological mother acting as a surrogate.

Courts also look to whether an interpretation is internally consistent within a plan in order to determine whether the administrator has abused its discretion. The Plaintiffs argue that the administrator's interpretation "does not attempt to reconcile the exclusion [of the expenses for surrogacy with] the covered benefit of pregnancy care," and so is not internally consistent. Pls.' Mot. 7. The administrator's interpretation of "expenses for surrogacy" as preventing the Plan from reimbursing for otherwise-covered pregnancy expenses does not render the Plan internally inconsistent. A policy may cover a broad category of treatment, subject to specific exclusions. The Florida District Court, addressing a similar argument, found that, "[a]lthough the Plan covers an insured's pregnancy costs and the costs associated with pregnancy complications, that certain exceptions apply to this does not make the Plan inconsistent." *See Fla. Health Sci. Ctr., Inc.*, 2006 WL 3201873 at *8. Just as it would not be inconsistent for a plan to cover surgical expenses but exclude expenses for cosmetic surgery, so it is not inconsistent for the Plan to cover pregnancy costs, while

excluding costs for a certain type of pregnancy.[9] Nor does reading the phrase to prohibit coverage of *all* expenses of a surrogate pregnancy render the provision about covering all expenses in a non-surrogate pregnancy meaningless.

Some courts also consider whether the administrator inconsistently applied the provision. Plaintiffs argue that the policy was inconsistently applied to True. They contend that when she was hired at MaineGeneral, she contacted EBPA and was informed that the Plan covered expenses for "surrogacy related pregnancies" and that she initially received benefits for some of her pregnancy expenses only to find out later that her claims were denied. AR 301. The Defendants respond that EBPA had no record of her contacting them because she was not an active member on the date that she called. The record further suggests that EBPA informed True that "a verification of benefits is not a guarantee of coverage." AR 302. The Plaintiffs have not produced any other documentation supporting this claim, nor any other evidence that the administrator, MaineGeneral, has interpreted or applied the Plan inconsistently to different Plan participants. The Plaintiffs' argument that they relied on the erroneous advice of an EBPA representative is made only to show that the Plan was inconsistently applied.[10] Although this is some evidence of inconsistency, the Plaintiffs cite no authority for the proposition that incorrect information given to

---

[9] The Plaintiffs do not argue that the surrogacy exclusion is void as against policy, and I offer no opinion in that regard.

[10] The Plaintiffs make no claim based on any other legal theory.

a Plan participant on one occasion or a reversal of a decision on coverage rises to the level of an abuse of discretion by the Plan Administrator.

The Administrator's interpretation of the Plan is supported by the plain meaning of "surrogacy." It is also consistent with the overall language and the purpose of the Plan. Finally, although there exists some inconsistent application of the Plan to Plaintiff True, the inconsistency was limited. The standard of review is worth reemphasizing: I do not review the interpretation of the provision *de novo*, but rather for whether the administrator's interpretation is reasonable. *See O'Shea*, 837 F.3d at 73. Accordingly, I conclude that the administrator's interpretation of the ambiguous phrase "expenses for surrogacy" was reasonable even under a heightened arbitrary and capricious standard, accounting for MaineGeneral's dual roles as administrator and insurer. *See Metro. Life Ins. Co.*, 554 U.S. at 108. Because I find that the Administrator did not abuse its discretion, I **GRANT** the Defendant's Motion for Judgment on the Record, and I **DENY** the Plaintiffs' Motion.

## II. Attorneys' Fees

Both the Plaintiffs and the Defendant argue that they are entitled to attorneys' fees should they prevail in this action. Because I have found that the Defendant is entitled to summary judgment, I address only the fee arguments in its favor.

The ERISA statue, 29 U.S.C. § 1132(g)(1), grants me the "discretion [to] allow a reasonable attorney's fee and costs of action to either party." In deciding whether to award fees in an ERISA action, I am guided by the following five factors:

> (1) the degree of culpability or bad faith attributable to the losing party;
> (2) the depth of the losing party's pocket, i.e., his or her capacity to pay
> an award; (3) the extent (if at all) to which such an award would deter

other persons acting under similar circumstances; (4) the benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and (5) the relative merit of the parties' positions.

*Gross v. Sun Life Assur. Co. of Canada*, 763 F.3d 73, 83 (1st Cir. 2014).

I will **DENY** the Defendant's request for attorneys' fees.[11] Given that I have found the phrase "expenses for surrogacy" to be ambiguous, I do not find that the above factors counsel in favor of awarding a fee.[12]

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Plaintiffs' motion for judgment on the record and **GRANTS** MaineGeneral's and EBPA's motions for judgment on the record. The parties will bear their own costs.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 28th day of September, 2018.

---

[11] Defendant EBPA also requests attorneys' fees because "clear case law supports its position." I **DENY** this request because, in considering the above five factors, I do not find that the Plaintiffs' inclusion of EBPA was in bad faith. *See Gross*, 763 F.3d at 83.

[12] I have considered the Defendant's argument that Roibas acted in bad faith in filing this lawsuit because he was attempting to escape his contractual obligation to pay for True's medical expenses. *See* Def.'s Mot. 24-26. I do not agree that Roibas acted in bad faith.